**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Barry C. Beckhum, | ) No. CV 07-8129-PCT-DGC (BPV) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Lisa Hirsch, et al., | ) |
| Defendants. | ) |

Plaintiff Barry C. Beckhum brought this civil rights action under 42 U.S.C. § 1983 against medical personnel at the Coconino County Jail: Head Nurse Lisa Hirsch, Nurse Elizabeth Broadwell, and Dr. Paul Fader (Doc. #8).[1] Before the Court is Defendants' Motion for Summary Judgment (Doc. #36), which is fully briefed (Doc. ##55, 58). Also before the Court are Defendants' Motion to Strike (Doc. #57), Plaintiff's Motion for Extension of Time (Doc. #59), and Plaintiff's Motion for Leave to File Sur-Reply/Motion to Strike (Doc. #60). The Court will deny the motions to strike, the motion for extension, and the motion for leave to file a sur-reply, and grant Defendants' summary judgment motion.

**I.      Background**

Plaintiff's claim arose in 2007 during his confinement at the Coconino County Jail (Doc. #8 at 1). Plaintiff's First Amended Complaint set forth two claims for relief. In Count I, Plaintiff alleged that Defendants acted with deliberate indifference to his serious

---

[1]A fourth Defendant, Nurse Betty, was dismissed for failure to serve (see Doc. #20).

medical needs in treating his diabetes (id. at 3). He claimed that they continued to administer the incorrect insulin – instead of the type prescribed by Plaintiff's physician – for about a month despite adverse effects (id.). Plaintiff further claimed that Defendants routinely delayed provision of time-sensitive medication and meals to manage his diabetes (id. at 3A). In Count II, Plaintiff alleged that the administration of blood glucose tests and insulin injections through the food trap door by Hirsch and Broadwell was unsanitary (id. at 4).

Defendants filed an Answer (Doc. #18), and the Court issued a Scheduling Order (Doc. #19). Defendants have now filed a Motion for Summary Judgment (Doc. #36).

## II. Motion for Summary Judgment

### A. Facts

The parties each submit a separate Statement of Facts (Doc. #37, Defs.' Statement of Facts (DSOF); Doc. #56, Pl.'s Statement of Facts (PSOF)). DSOF is supported by 220 pages of exhibits, identified as Exhibits A-Y (Doc. ##37-39). Included in these exhibits are Defendants' affidavits (Doc. #37, Exs. E-F; Doc. #38, Ex. H),[2] Plaintiff's responses to Requests for Admissions (Doc. #37, Ex. C), copies of Plaintiff's Inmate Request Forms (Doc. #37, Ex. F, Attachs.; Doc. #38, Ex. I), excerpts from Plaintiff's deposition (Doc. #38, Ex. G), jail policies and records (within Doc. ##37-39), and copies of Plaintiff's medical records (id.). PSOF is supported by 121 pages of exhibits that include Plaintiff's own declaration with attachments (Doc. #56, Ex. A, Attachs.), Defendants' responses to Requests for Admissions and Interrogatories (id., Exs. B-G, K-M), articles on diabetes management and treatment guidelines (id., Exs. H-J), Plaintiff's formal grievance and the response thereto (id., Exs. –O), and copies of e-mail and letter correspondence (id., Ex. P).

---

[2]Defendants' affidavits are supported by various exhibits that make up Exhibits A-Y. As a result, many exhibits are submitted twice; once as an attachment to an affidavit, and again as a stand-alone exhibit. For example, Hirsch's affidavit is Exhibit F, which includes 16 attached exhibits – all identified by letters but not in alphabetical order (Doc. #37, Ex. F, Attachs.). One attached exhibit is Exhibit S – Plaintiff's medical records from another detention center (id., Ex. S). Exhibit S is also found in Document #39, Ex. S. In short, Defendants' exhibits are confusing and difficult to navigate, so where Plaintiff has submitted the same document, the Court cites to Plaintiff's exhibit.

The parties' respective Statements of Facts set out the following facts. Plaintiff was confined in the Coconino County Jail from July 31, 2007, through January 18, 2008 (DSOF ¶ 1; PSOF ¶ 1). When he was booked into the jail, Plaintiff informed medical staff that he had Type 1 diabetes, asthma, and schizophrenia and bi-polar disorder (DSOF ¶ 3; PSOF ¶ 2). As a Type 1 diabetic, Plaintiff's body does not produce insulin, so he requires a consistent insulin dose to maintain a healthy blood glucose level and avoid the risks of serious and life-threatening complications (PSOF ¶¶ 5-6, 22). Plaintiff states that he informed medical staff that he required daily injections of Lantus insulin (a long-lasting insulin), which he had been taking prior to his incarceration (PSOF ¶ 27). Defendants state that after Plaintiff was booked into jail, his blood glucose levels were checked and he received an injunction of regular insulin (DSOF ¶ 4).

Defendants state that from July 31 to August 28, 2007, Plaintiff was on a medical regimen of 70/30 insulin (a combination of a medium to long-lasting insulin and regular insulin) and as-needed regular insulin, his blood glucose levels were checked three to four times daily, and he received a diabetic diet (DSOF ¶ 6 & Ex. F, Fader Aff. ¶ 14; PSOF ¶ 29). On August 28, 2007, Fader changed Plaintiff's insulin prescription from the 70/30 insulin to Lantus insulin and as-needed regular insulin (DSOF ¶ 7).

Also on August 28, 2007, Plaintiff submitted an Inmate Request Form (informal grievance) that complained about the overall care he was receiving for his diabetes (PSOF ¶ 31; DSOF ¶ 10). Inmate Relations Officer Waldren responded that same day. He directed Plaintiff to the grievance process and forwarded Plaintiff's Inmate Request Form to the medical department (DSOF ¶ 11; PSOF ¶ 32). On August 30, Plaintiff completed another Inmate Request Form to complain about his diabetes treatment (PSOF ¶ 33). On September 3, Hirsch delivered a response to Plaintiff's August 28 and 30 informal grievances. The response documented her conversation with Plaintiff about the timing of blood sugar tests and the effect of his diet on his condition (DSOF ¶ 12; PSOF ¶ 34; see Doc. #56, Ex. A, Ex. 2).

On September 6, Plaintiff submitted two more Inmate Request Forms complaining

about delays in receiving his insulin (DSOF ¶¶ 13-14; PSOF ¶ 35). On September 8, he submitted another Inmate Request Form to complain that his insulin was administered late, which caused his blood sugar level to rise to 300 (PSOF ¶ 36; DSOF ¶ 15). On September 9, Plaintiff filed more Inmate Request Forms: one made the same complaint about receiving insulin late; two others complained that in the previous days, Hirsch and Broadwell had performed glucose finger-stick tests without gloves (PSOF ¶ 37; DSOF ¶¶ 16-17).

On September 10, Plaintiff filed a formal grievance regarding his treatment complaints (DSOF ¶ 18; PSOF ¶ 38). On September 13, Hirsch issued a written response to Plaintiff's formal grievance. The response explained medical staff procedures and the reasons for those procedures, and indicated that blood glucose tests were not to be done without gloves and injections were not to be administered through the trap doors (DSOF ¶ 19; PSOF ¶ 39). This written response from Hirsch was delivered to Plaintiff on September 14, by Officers Waldren and Glenn (DSOF ¶ 23; PSOF ¶ 41). Plaintiff states that at that time, he advised the officers that his treatment was improving, but he still had concerns that he wanted the jail commander to address (PSOF ¶ 41). Plaintiff states that Waldren told him he could appeal the grievance to the jail commander, but Waldren had no grievance forms with him at that time. Waldren assured Plaintiff that he would be provided with one (PSOF ¶ 41). Defendants state that Plaintiff did not express a desire to appeal Hirsch's response (DSOF ¶ 23).

By September 16, Plaintiff had not received a grievance form from Waldren, so he requested the form from the housing unit staff. He was told that only the Inmate Relations Officer (Waldren) could provide the form (PSOF ¶ 43). That same day, Plaintiff submitted an Inmate Request Form addressed to Waldren requesting a grievance form so he could file an appeal. There was no response to this Inmate Request Form (PSOF ¶ 44). On October 15, Plaintiff sent a second Inmate Request Form to Waldren requesting a grievance form so that he could file an appeal. There was no response (PSOF ¶ 45).

Meanwhile, Plaintiff had begun to complain to his attorney and his mother about his treatment (PSOF ¶ 47). Plaintiff's attorney was put in touch with Mikkel Jordahl, a civil rights advisor who began to work with the Coconino County Jail in an attempt to resolve

Plaintiff's complaints about medical care (DSOF ¶ 48). Plaintiff states that Jordahl told him that he need not file any additional grievances because Jordahl would intercede on his behalf (PSOF ¶ 49). In September 2007, Jordahl met with Hirsch to discuss Plaintiff's treatment (PSOF ¶ 53).

Beginning on October 3, Plaintiff's blood glucose levels were fluctuating greatly (DSOF ¶¶ 27-28).[3] At 5:30 a.m., his blood glucose levels were 199; they dropped to 40 by 11:30 a.m., at which time Plaintiff was given insulin and a meal (DSOF ¶ 27). Later that day, at 5:53 p.m., his levels were at 160 (DSOF ¶ 27). Also on October 3, Plaintiff was moved to the medical housing unit so that his dietary intake could be observed. He returned to his general population housing unit the next day (DSOF ¶ 29; PSOF ¶ 56). On October 5, at 4:35 p.m., Plaintiff's blood glucose levels were 56. He was not given insulin (DSOF ¶ 28). Later that day, at 8:00 p.m., he was given Lantus insulin (DSOF ¶ 28).

In January 2008, Plaintiff was transferred from the jail to the Arizona Department of Corrections (PSOF ¶ 61).

**B.    Parties' Contentions**

**1. Defendants' Motion**

Defendants seek summary judgment on the grounds that (1) Plaintiff failed to exhaust his administrative remedies, (2) Plaintiff cannot show that Defendants were deliberately indifferent to his serious medical condition, and (3) Hirsch and Broadwell are entitled to qualified immunity (id.).

Defendants first argue that Plaintiff failed to exhaust the available administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id. at 3-4). They submit a copy of the Inmate Rules and Regulations Handbook, which sets out the steps in the grievances process: (1) first attempt to resolve the complaint informally; (2) if not resolved, file an Inmate Request Form with the Inmate Relations Officer; (3) if still not resolved, file a formal grievance to the supervisor on an inmate grievance form; and (4) if not satisfied with the supervisor's response, file an appeal – also on an inmate grievance form

---

[3]A normal blood glucose level is between 50 and 350 mg/dl (PSOF ¶ 23).

– to the jail commander, whose decision is final (id. at 3; Doc. #39, Ex. X).

Defendants contend that although Plaintiff filed a formal grievance to the nursing supervisor (Hirsch) regarding his complaints about treatment, he failed to appeal Hirsch's response to the jail commander (Doc. #36 at 3). Defendants maintain that Plaintiff's failure to complete the last step of the grievance process requires dismissal of his claim (id. at 5).

Defendants next argue that the care provided to Plaintiff did not amount to deliberate indifference. Defendants do not dispute that Plaintiff's diabetes constituted a serious medical condition (id. at 10). They note that immediately upon his arrival at the jail, they learned of his condition and began regular blood-glucose-level checks and administration of two types of insulin (id. at 11). With regard to Plaintiff's complaint about receiving the 70/30 insulin instead of Lantus insulin, Defendants assert that the medication formulary established for the jail medical staff at the time prescribed 70/30 insulin as the long-duration insulin to be used for those with Type 1 diabetes (id.; Doc. #37, Ex. F, Hirsh Aff. ¶ 18). According to Fader, 70/30 insulin is an accepted and effective long-duration insulin for Type 1 diabetes that is used in several medical arenas (id., Ex. E, Fader Aff. ¶ 14).

Defendants argue that Plaintiff's diabetes was not well controlled before his incarceration and, even after he was switched to the Lantus insulin, his condition remained unstable (Doc. #36 at 11). Defendants submit that this is because Plaintiff was a "brittle diabetic," meaning that even with consistent doses of insulin and a prescribed diet, he produces highly variable responses within short periods of time (Doc. #37, Ex. E, Fader Aff. ¶ 6). They contend that Plaintiff's blood glucose would vary highly regardless of efforts to control it (Doc. #36 at 12). As to those instances where Plaintiff alleges that his blood glucose levels were low, Defendants claim that the medical records show the instances were of short duration (id.).

Defendants assert that administration of blood glucose tests and injections through the trap door were isolated occurrences and at least one incident was necessitated by a security issue (id. at 12-13). Defendants argue that episodic acts do not amount to a constitutional violation without a showing that the official acted with deliberate indifference (id. at 13).

They maintain that the few number of instances and the fact that the practiced ceased show that neither Broadwell nor Hirsch acted with deliberate indifference (id.).

Finally, Defendants contend that because Hirsch and Broadwell were operating pursuant the jail's policies, the jail's established formulary, and physician's orders when they administered medication to Plaintiff, claims against them are barred (id. at 13). Defendants submit that at all times, these two Defendants followed the proper medical protocol and standing physician's order and thus did not violate a clearly established law (id. at 13-14).

## 2. Plaintiff's Response[4]

Plaintiff opposes Defendants' motion (Doc. #55). He explains Type 1 diabetes and the importance of glycemic control in management his disease (id. at 2-3). He submits that during his incarceration, he did not receive fundamental lab tests and physical exams that are vital to treating his conditions (id.). Plaintiff states that although it is essential that medication and nutrition/diet therapy be continued without interruption to avoid hyperglycemia or hypoglycemia, when he entered the jail, Defendants changed his insulin medication from Lantus to 70/30 (id. at 4).

Regarding his grievances, Plaintiff argues that the law recognizes that it is possible for a prisoner to exhaust administrative remedies without completing the highest level of administrative review (id. at 10). He cites cases where courts have found exhaustion despite failure to fully complete the grievance process when an inmate was denied grievance forms, where officials lost grievances, where officials failed to timely respond to grievances, where an inmate received relief at an intermediate level, where injury prevented an inmate from timely filing a grievance, and where officials give a favorable decision in response to a grievance but then failed to implement the promised relief (id.).

Plaintiff argues that the grievance procedures were not available to him when jail officials refused to provide him with a grievance form for an appeal despite his repeated requests (id. at 11). Thus, he contends that he exhausted the procedure that were available

---

[4]The Court issued the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), informing Plaintiff of his obligation to respond to Defendants' motion (Doc. #40).

to him.

In the alternative, he submits that the failure to comply with administrative procedures constitutes a "special circumstances" because he was advised by Jordahl, the civil rights advisor, not to file any further grievances (id. at 11-12). Plaintiff alleges that he should not be penalized for relying on the advice of an attorney (id., citing Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004)). Plaintiff's third argument for exhaustion is that he received a favorable response to his formal grievance—Hirsch promised that certain adjustments to his treatment would be made, that his injections would be timely administered, and that he would no longer receive injections and blood glucose checks through the trap door (id. at 12). Plaintiff argues that the fact that Hirsch did not implement those promised changes should not require him to file additional grievances (id., citing Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004)).

As to Defendants' claim that there was no deliberate indifference on the part of Defendants, Plaintiff relies on the guidelines established by the American Diabetes Association, the National Commission on Correctional Health Care, and the National Clearinghouse Guidelines (id. at 16). He submits that these guidelines call for diabetic inmates to receive specific diagnostic testing and examinations upon an initial medical evaluation; however, the record shows that Plaintiff never received some of these tests, such as a urine microalbumine test, an exam of the feet, and a retinal examination (id.) He states that he likewise never received nutritional therapy in the form of an individualized meal plan (id. at 16-17). Further, Plaintiff contends that although the guidelines urge institutions to implement policies that require staff to notify a physician when an inmates' blood glucose levels are outside a certain range, when Plaintiff's blood glucose levels fell outside of the normal range on multiple occasions, the results were reported to Fader on just one occasion (id. at 17).

Plaintiff argues that from this record, a reasonable jury could conclude that Defendants' failure to adhere to well-known treatment guidelines led to severe fluctuations in Plaintiff' blood sugar levels and exposed him to unnecessary risks (id.).

Plaintiff also presents an argument for municipal liability and contends that the Coconino County Jail maintained a policy of omission by failing to obtain accreditation, which in turn led to jail employees' unlawful conduct (id. at 18-19). He notes that Defendants admit that the jail is not accredited but that they look to the national guidelines to establish treatment programs (id. at 19). Plaintiff argues that this omission—the failure to obtain state-required accreditation—was the moving force behind Defendants' unlawful conduct and had the jail obtained accreditation, Plaintiff's rights would not have been violated (id. at 20).

Lastly, Plaintiff asserts that there is a material question of fact whether Defendants violated Plaintiff's rights and it is clearly established that he had a right to adequate treatment for his diabetes; therefore, qualified immunity does not apply (id. at 21).

### 3. Defendants' Reply

In reply, Defendants first argue that Plaintiff failed to file a separate statement of contravening facts as required under the Rules of Procedure (Doc. #58 at 2). Defendants next reassert that with regard to exhaustion, Plaintiff expressed no desire to appeal Hirsch's response to the formal grievance (id. at 3). They note that one of the Inmate Request Forms Plaintiff proffers to show that he requested a grievance form does not contain an acknowledgment that it was received by a staff member, and the other form does not mention a request to file an appeal (id.). As to Plaintiff's assertion that Jordahl's involvement and advice not to file further grievances constitutes an special circumstance excusing exhaustion, Defendants note that after Jordahl's participation and meeting with jail staff, Plaintiff failed to file an appeal (id.).

In support of summary judgment, Defendants point out that the parties agree on a substantial number of facts; namely, that Plaintiff was screened upon his arrival at the jail and immediately started on treatment for his condition, he was started on insulin and his blood glucose levels were monitored 3-4 times a day, he was a brittle diabetic, and when his blood glucose levels were high or low the medical staff responded to bring the levels closer to a normal range (id.). Defendants assert that 70/30 insulin given to Plaintiff is effective and

commonly used to treat diabetes and, regardless, Plaintiff was switched back to his preferred insulin after just 26 days (id. at 5).

Defendants contend that the national guidelines Plaintiff's relies on to demonstrate the standard of care are merely guidelines and that the guidelines themselves emphasize that they are general in nature and not meant to be a management manual (id. at 7). Defendants also note that many of the tests Plaintiff refers to are required annually and were not due during his time at the jail (id.). And the record shows that Plaintiff was provided dietary counseling (id. at 8). Defendants explain that the state statute Plaintiff cites in reference to accreditation provides that accreditation is not the only means of complying with the statute (id. at 8, citing Ariz. Rev. Stat. § 36-402(A)). Defendants argue that Plaintiff presents no evidence to show that he was harmed by either the absence of certain tests or the lack of accreditation exams (id. at 7-9).

As to the claims pertaining to blood tests and injections administered in an unsanitary manner, Defendants dispute Plaintiff's claims but contend that even assuming they are true, the few instances of improper administration not rise to a constitutional violation (id. at 8-9).

## III.    Other Motions

### A.    Defendants' Motion to Strike/Plaintiff's Motion for Extension

Defendants move to strike two documents submitted by Plaintiff with his response: (1) the Inmate Request Form dated September 16, 2007, which asks for a grievance form to file an appeal, and (2) the Inmate Request Form dated October 15, 2007, which requests a grievance form (Doc. #57 at 2, referring to Doc. #56, Ex. A, Ex. 4). Defendants argue that Plaintiff failed to disclose these two documents as required under Federal Rule of Civil Procedure 26 and the Court's Scheduling Order (Doc. #57 at 2). For this reason, they maintain that pursuant to Rule 37(c)(1), the documents and any references to them must be excluded  (id. at 3).

Plaintiff filed a Motion for Extension of Time to respond to Defendants' Motion to Strike, and he lodged a proposed response (Doc. ##59, 61).

The Court will deny Defendants' Motion to Strike and, because it need not consider

Plaintiff's response in its determination, it will also deny Plaintiff's Motion for Extension of Time. Pro se prisoner actions are exempt from Rule 26 initial disclosure requirements. Fed. R. Civ. P. 26(a)(1)(B)(iv). The Court's Scheduling Order specified only that the parties provide witness lists, including experts, as required under Rule 26(a)(2) and (3). To the extent that Plaintiff failed to proffer these two exhibits in response to Defendants' request for documents, the Court finds that failure to be harmless because these Inmate Request Forms are Defendants' records to which they had access. See Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 846 (9th Cir. 2004) (late disclosure of evidence was harmless because the defendant had knowledge of the evidence). In addressing disclosure issues, the Ninth Circuit has instructed that "[d]istrict courts must take care to insure that pro se litigants are provided with proper notice regarding the complex procedural issues involved in summary judgment." Id. Further, the Ninth Circuit has given "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). Here, in exercising its discretion, the Court declines to exclude Plaintiff's evidence.

**B.     Plaintiff's Motion for Leave to File Sur-Reply**

Plaintiff seeks to strike and to file a response to Defendants' Reply on the ground that it raises arguments and issues that were not presented in the summary judgment motion (Doc. #60). Specifically, Plaintiff refers to Defendants' assertions regarding the opinion of one of Plaintiff's previous unnamed physicians and Defendants' arguments regarding the role of national guidelines and accreditation of correctional facilities' medical care regimens (id. at 2-5). Defendants oppose Plaintiff's motion to strike and to file a sur-reply (Doc. #62).

The Court will deny Plaintiff's motion as unnecessary. Any arguments raised for the first time in Defendants' reply brief will not be consider by the Court. See Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003). The Court notes, however, that Defendants' "guidelines" and "accreditation" arguments are in response to Plaintiff's claims set forth in his opposition brief. Thus, Defendants' arguments are not new; they are rebuttal arguments, which are permitted in a reply brief. See EEOC v. Creative Networks, LLC and

Res-Care, Inc., 2008 WL 5225807, *2 (D.Ariz. 2008).

**IV.     Exhaustion**

    **A.     Legal Standard**

When an exhaustion issue is raised in a motion for summary judgment, the court should treat it as a matter of abatement in an unenumerated motion under Rule 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368-69 (9th Cir. 1988). The Court will construe Defendant's exhaustion argument as unenumerated Rule 12(b) motion.

The PLRA requires a prisoner to exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza, 837 F.2d at 369 (quotation omitted).

    **B.     Analysis**

There is no dispute that the final step in the jail's grievance procedures is an appeal to the jail commander and that Plaintiff filed a formal grievance but did not thereafter appeal to the jail commander.  The Court must determine (1) whether Plaintiff had remedies available to him after Hirsch's response to his formal grievance or (2) whether Plaintiff was required to appeal in light of the circumstances or the substance of Hirsch's response.

        **1.  Available Remedies**

There is no obligation to exhaust a remedy that is not "available." See Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005). "If prison employees refuse to provide inmates

with those [grievance] forms when requested, it is difficult to understand how the inmate has any available remedies." Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (per curiam) (administrative remedy not available where officials refuse to provide inmates with forms when requested); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) (where officials thwarted the plaintiff's efforts to exhaust his remedies, the grievance procedure was not "available" within the meaning of § 1997e(a)); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy that prison officials prevent a prisoner from utilizing is not an "available" remedy under § 1997e(a)).

Plaintiff presents evidence that he requested a grievance form to file an appeal of Hirsch's response but that his requests were not responded to and, thus, an appeal was not available (Doc. #56, Ex. A, Pl. Decl. ¶¶ 25-28; Ex. 4). In his affidavit, Walden states that Plaintiff did not indicate that he wanted to appeal and that Walden received "no written requests for a grievance form from [Plaintiff], and no appeals to the jail commander were presented to [Walden]" Doc. #38, Ex. P., Walden Aff.). That no request for a grievance form was "received" by Walden is not proof that a request for a form was not submitted. Although Defendants argue that one of the two Inmate Request Forms Plaintiff submitted was not signed as "received" by an officer, the other form clearly indicates that it was "received" by an officer, who is identified by badge number (Doc. #56, Ex. A, Ex. 4). Notably, Defendants do not present any alternatives available to Plaintiff if he did not receive a response to an Inmate Request Form or if he was unable to secure a grievance form for filing an appeal. On this record, the Court finds that Defendants have not met their burden to demonstrate that administrative remedies were available after Plaintiff received no forms or responses to his requests.

## 2. Appeal Requirement

The Court rejects Plaintiff's suggestion that his reliance on Jordahl's advice not to file further grievances constitutes a "special circumstance" justifying his failure to exhaust. See Hemphill, 380 F.3d at 689 ("special circumstance" exists where an inmate's failure to exhaust stems from ambiguous grievance procedures and the inmate's reasonable

interpretation of those procedures). Jordahl is not a jail official. His advice to Plaintiff does not amount to "reliable information" from an administrator that no additional relief is available though the grievance process. See Brown, 422 F.3d at 935 (an inmate need not continue to exhaust additional levels of review if he has "been reliably informed by an administrator that no remedies are available").

But Plaintiff's assertion that he was not required to file additional grievances after receipt of Hirsch's response is tenable. Hirsch's thorough, three-page response found many of Plaintiff's concerns to be legitimate and included assurances that adjustments to his treatment would be made, that injections would be administered timely, and that there would be no more injections and blood glucose checks through the trap door (Doc. #55 at 12; Doc. #56, Ex. O). The response did not include any language informing Plaintiff that he could appeal the response or what further steps to take in the grievance process (see Doc. #56, Ex. O). The Court finds that it was reasonable for Plaintiff to infer from this response that the issues were addressed or resolved and that no further appeal was necessary. This situation is similar to Abney v. McGinnis, where the prisoner repeatedly obtained favorable rulings on his grievances but the defendants failed to implement the rulings. 380 F.3d at 669. The prisoner's only available remedy was to file another grievance, which he did, and those grievances were resolved, but again not implemented. Id. The Second Circuit found that to require a prisoner who wins in principle to file another grievance to win in fact could lead to a never-ending cycle of grievances. Id. (citing Dixon v. Page, 291 F.3d 485, 490 (7th Cir. 2002)). In this case, once Hirsch confirmed to Plaintiff that adjustments would be made to address his treatment concerns, Plaintiff essentially won in principle. He was not required to wait to see if Hirsch followed through on her promises and, if she did not, file another grievance or appeal.

In sum, Defendants have failed to demonstrate that administrative remedies were available to Plaintiff after he received Hirsch's response to his formal grievance. In the alternative, Plaintiff was not required to appeal Hirsch's response in light of the assurances that his complaints were addressed and resolved. Defendants' request for dismissal based

on nonexhaustion will be denied.

**V.    Summary Judgment**

Defendants' remaining arguments – that they were not deliberately indifferent to Plaintiff's serious medical need and, nonetheless, they are entitled to qualified immunity – are addressed in the summary judgment analysis.

**A.    Legal Standards**

**1. Summary Judgment**

A court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

If the movant meets its burden with a properly supported motion, the burden then shifts to the nonmovant to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The nonmovant need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968). By affidavit or as otherwise provided by Rule 56, the nonmovant must designate specific facts that show there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249; <u>Devereaux</u>, 263 F.3d at 1076. The nonmovant may not rest upon the pleadings' mere allegations and denials, but must present evidence of specific disputed facts. <u>See</u> <u>Anderson</u>, 477 U.S. at 248.

At summary judgment, the judge's function is not to weigh the evidence and

determine the truth but to determine whether there is a genuine issue for trial.  Id. at 249.  In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor.  Id. at 255.

## 2. Fourteenth Amendment

As a pretrial detainee, Plaintiff is protected by the Fourteenth Amendment's Due Process Clause, which establishes that "detainees have a right against jail conditions or restrictions that 'amount to punishment.'"  Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).  The Fourteenth Amendment standard is more protective than the Eighth Amendment.  "This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment."  Id.; Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004).  Although a pretrial detainee's right to receive adequate medical care derives from the Due Process Clause of the Fourteenth Amendment, Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)), it is difficult to apply the "punishment" standard to medical care claims in the same manner it is applied to conditions-of-confinement claims.  See Pierce, 526 F.3d at 1206-1213 (addressing detainees' claims regarding reading materials, telephone access, holding cells, exercise, and other conditions at the county's jail facilities).  Under the Due Process Clause, however, a detainee is protected against conditions or conduct – including conduct related to medical treatment – that is arbitrary or purposeless.  See id. at 1205 (if a particular condition or restriction is arbitrary or purposeless, a court may infer that the purpose of the action is punishment that may not be inflicted on pretrial detainees) (citing Bell, 441 U.S. at 539).

At a minimum, the Due Process Clause imposes the same duty to provide adequate medical care to those incarcerated as is imposed by the Eighth Amendment.  Gibson, 290 F.3d at 1187.  Therefore, the Eighth Amendment standards governing medical care may be applied.  See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) ("the eighth amendment guarantees provide a minimum

standard of care for determining [the plaintiff's] rights as a pretrial detainee, including his right to medical care").

To establish a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This requires the plaintiff to make two showings: (1) that he suffered a serious medical need and (2) that the defendant's response to that serious medical need was deliberately indifferent. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference. Jett, 439 F.3d at 1096. Prison officials are deliberately indifferent to a prisoner's serious medical needs if they deny, delay, or intentionally interfere with medical treatment. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). But a delay in providing medical treatment does not constitute an Eighth Amendment violation unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)). Thus, to establish deliberate indifference, a prisoner must show that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

"[A] mere 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). Therefore, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the course of treatment the doctors chose was medically unacceptable in light of the circumstances and that it was chosen in conscious disregard of an excessive risk to the prisoner's health. Jackson v. McIntosh, 90 F.3d 330,

332 (9th Cir. 1996).

**B.      Analysis**

The Court rejects Defendants' contention that Plaintiff failed to comply with  the Rules of Procedure because he failed to file a separate statement of contravening facts (Doc. #58 at 2).   Although the PSOF does not set forth numbered paragraphs directly corresponding to each of Defendants' numbered paragraphs, it more than sufficiently establishes disputes with the DSOF.   In light of Plaintiff's *pro se* status and the requirement to construe his pleadings liberally, the Court will consider his response and the PSOF. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Turning to the merits, the parties do not dispute that Plaintiff suffered from a serious medical need, thereby satisfying the first prong of the deliberate-indifference test.  Estelle, 429 U.S. at 104.   The summary judgment analysis thus turns on whether Defendants' response to Plaintiff's serious medical need was deliberately indifferent.  See Jett, 439 F.3d at 1096.

To meet their burden on summary judgment, Defendants must come forward with evidence that establishes the absence of a triable issue of fact; in other words, evidence that they did not deny or delay treatment for Plaintiff's diabetes knowing that such treatment was medically appropriate.   The gravamen of Plaintiff's complaint is that the lack of initial diagnostic testing, the delay in obtaining Lantus insulin, delays in administering injections, and injections and blood glucose checks through the trap door exemplify deliberately indifferent medical care.

**1.  Initial testing**

The parties dispute whether Defendants were required to provide a battery of diagnostic tests when Plaintiff arrived at the jail.  Defendants submit a copy of the Coconino County Policy governing treatment of diabetic inmates (Doc. #37, Exs. F, V).  This policy requires that an initial medical questionnaire on the inmate's diabetic history be completed, that medical staff be notified of the inmate's condition, that nursing staff conduct a medical

screening, and that nursing staff ensure a medically approved diabetic diet for the inmate and daily insulin treatment (id.). Finally, the policy requires a physician to review medications given to diabetic inmates at the earliest opportune time (id.). The record shows that upon his arrival at the jail, an initial evaluation and medical screening were performed, Plaintiff was immediately placed on a protocol of regular blood glucose monitoring and prescribed insulin, and he was provided a diabetic diet (Doc. #37, DSOF ¶ 6; Ex. B; Ex. F, Hirsch Aff. ¶¶ 5-6). According to Defendants' evidence, they adhered to the jail's policy requiring specific and immediate treatment for incoming diabetic inmates.

In response, Plaintiff proffers articles regarding the treatment of diabetes in the correctional setting and that suggest that certain tests be performed, such as a Hemoglobin A1C blood test, a fasting blood lipid test, a urine test, as well as eye and foot exams (Doc. #56, Exs. H-J). Although Plaintiff presents these articles as establishing the standard for diabetes treatment, none of the articles makes such a claim, and Plaintiff presents no medical expert who makes that claim. The American Diabetes Association article specifically states "[t]his document provides a general set of guideline for diabetes care . . . . It is not designed to be a diabetes management manual" (id., Ex. H at S73). The National Commission on Correctional Health Care describes its published guidelines as tools to help correctional health care professionals manage diseases, but notes that its "guidelines cannot and do not substitute for individual clinical professional judgment" (id., Ex. I at 8, citing http://www.ncchc.org/resources/guidelines.html). The National Guidelines article states that it "provides a general set of guidelines for diabetes care in correctional institutions. It is not designed to be a diabetes management manual" (id., Ex. J at 9). Thus, Plaintiff's evidence consists of various recommendations. There is nothing to show that Defendants' failure to adhere to these recommendations amounted to deliberate indifference.

Moreover, there is no dispute that when he arrived at the jail, Plaintiff was medically screened, immediately received insulin, and was placed on a protocol to treat his diabetes (see Doc. #37, Ex. F; Doc. #56, PSOF ¶¶ 27, 29). Plaintiff also received a Hemoglobin A1C blood test during his confinement at the jail (Doc. #56, PSOF ¶ 10). Finally, Plaintiff makes

no allegations that he suffered eye or foot problems that could have been avoided with an initial eye or comprehensive foot exam. See Hunt, 865 F.2d at 200 (any delay in care must be harmful to implicate the Eighth Amendment).

Plaintiff's claim that Defendants were deliberately different because the jail facility was not accredited represents an official-capacity claim, or a claim against the county, and such a claim was not raised in Plaintiff's First Amended Complaint (see Doc. #8, setting forth only individual-capacity claims against the named Defendants). Regardless, Plaintiff cites no legal authority holding that the lack of accreditation, standing alone, gives rise to an Eighth Amendment violation. As noted by Defendants, state law does not require accreditation. It only requires some type of annual inspection by an outside agency (Doc. #58 at 8, citing Ariz. Rev. Stat. § 36-402(A)(11)).

The Court concludes, on the basis of undisputed facts and as a matter of law, that neither the failure to perform various medical and diagnostic tests at booking nor that lack of accreditation amounts to deliberate indifference.

### 2. Insulin

Plaintiff immediately was placed on a regimen of insulin treatment when he arrived at the jail. Defendants administered 70/30 insulin along with regular insulin (Doc. #37, Ex. F, Hirsch Aff. ¶ 15). Hirsch attested that the 70/30 insulin was the long-acting insulin on the Coconino's Jail's formulary at the time (id. ¶ 18). Nonetheless, Fader switched Plaintiff from the 70/30 insulin to Lantus insulin on August 28, 2007, less than month after Plaintiff arrived at the jail (id. ¶ 19). Plaintiff's medical records reflect that his blood glucose levels continued to fluctuate and his condition remained difficult to manage even after the switch to Lantus insulin (id. ¶ 20).

Plaintiff provides few allegations regarding how he was harmed from the initial use of 70/30 insulin. In his pleading, he stated that he began to get very sick, that his glucose levels rose extremely high, which in turn harmed his pancreas (Doc. #8 at 3). In his response and PSOF, however, he makes no additional or specific allegations regarding the harm that resulted from the use of a different type of insulin. See Celotex, 477 U.S. at 324 (nonmovant

must "go beyond the pleadings . . . and designate specific facts showing" a material factual dispute). Plaintiff did not respond to Defendants' evidence showing that Plaintiff's glucose levels continued to fluctuate after the switch to Lantus, nor did he dispute Defendants' diagnosis of Plaintiff as a "brittle diabetic" with highly variable responses to consistent doses of insulin and a managed diet (see Doc. #37, DSOF ¶ 5). As a result, there is nothing to suggest that the use of 70/30 insulin was medically unacceptable, used in disregard of a risk to Plaintiff's health, or damaging to Plaintiff. See Jackson, 90 F.3d at 332.

Plaintiff may have disagreed with Defendants' initial decision to use 70/30 insulin, but mere disagreements between an inmate and medical personnel over the course of medical treatment does not establish deliberate indifference. See Toguchi, 391 F.3d at 1058. Plaintiff has not presented evidence from which a reasonable jury could conclude that the use of 70/30 insulin for approximately one month amounted to deliberate indifference.

### 3. Injection delays

The record shows that Plaintiff received late insulin injections twice on September 6, once on September 8, and again on September 9 (Doc. #56, Ex. A, Pl. Decl. ¶¶ 20-22). On September 10, Plaintiff file his formal grievance in which he complained generally about untimely injections (id. ¶ 23). Hirsch's response acknowledged that Plaintiff may have received some untimely injections, but noted that the majority of his injections have been within an hour of his meal times, which is standard practice (id., Ex. O at 2).

Plaintiff does not present specific facts or evidence showing harm caused by a few late injections. Nor does Plaintiff aver that the late injections continued after Hirsch's response to the formal grievance (see id., Ex. A, Pl. Decl. ¶ 24 (stating only that injections and blood glucose checks through the trap door continued after Hirsch issued her response)). Moreover, the record shows that Defendants responded to Plaintiff's concerns about the timeliness of injections. Plaintiff has not presented evidence from which a reasonable jury could conclude that Defendants acted with deliberate indifference concerning the timing of Plaintiff's injections.

### 4. Injections and blood glucose tests through trap door

In his formal grievance to Hirsch, Plaintiff complained that he received blood glucose tests and insulin injections through the trap door (Doc. #56, Ex. N). In the September 13, 2007 response to this complaint, Hirsch acknowledged that it was not an ideal way to administer injections, stated that she discussed this issue with the nurses, and assured Plaintiff that it would not happen again (id., Ex. O). In his deposition, Plaintiff confirmed that Hirsch had agreed to change the practice of administering injections through the trap door, but that "[i]t happened maybe two more – one or two more occasions" (Doc. #38, Ex. G, part 2, Pl. Dep. 145:10-17). Plaintiff averred that in all, he received injections through the trap door 4 or 5 times during his confinement at the jail (id., Ex. G, part 3, Pl. Dep. 161:22-162:3).

Plaintiff received blood glucose checks 3-4 times a day, and after most of these checks, he received insulin injections (Doc. #37, Ex. F, Hirsch Aff. ¶¶ 7, 15-16). Therefore, during his 5 and 1/2-month jail confinement, Plaintiff received at least 500 or more blood glucose checks and insulin injections. His admission that just 4 or 5 of these injections were improperly administered through the trap door fails to establish deliberately indifferent care. If the neglect is an "isolated occurrence" or an "isolated exception" to the overall treatment of the prisoner, it "militates against a finding of deliberate indifference." McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). Although Plaintiff's concerns about the unsanitary practice of administering injections through the trap door were valid, he has failed to show that he contracted an infection or suffered any harm as a result of those isolated occurrences (see Doc. #38, Ex. G, part 4, Pl. Dep., 158:4-159:16). His assertion that he *may* have contracted an infection or disease that has not yet presented is purely speculative (see id.).

Finally, as stated, Hirsch responded to Plaintiff's concern about use of the trap door and assured him that this practice would not continue (Doc. #56, Ex. O at 3). Shortly after issuing this response, Hirsch held a medical staff meeting and posted the meeting's agenda, which specifically addressed insulin administration and directed that blood glucose checks

and insulin injections are "NEVER to be done thru the trap (unless of course there is some oddity). Gloves are to be worn at all time during this procedure!" (Doc. #39, Ex. U (meeting agenda dated 10/16/07)). This demonstrates that Defendants did not disregard Plaintiff's complaints or the risk to his health. Again, Plaintiff has failed to provide evidence from which a reasonable jury could find that the few instances of trap-door injections amounted to deliberate indifference.

In conclusion, the Court finds that there exists no genuine issue of material fact precluding summary judgment. The record reflects that Defendants provided treatment that was medically appropriate for Plaintiff's condition. <u>See</u> <u>Wood</u>, 900 F.2d at 1334. Defendants' Motion for Summary Judgment will therefore be granted, and the Court need not address qualified immunity.

IT IS ORDERED:

1.      The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. #36) and Motion to Strike (Doc. #57 ), and Plaintiff's Motion for Extension of Time (Doc. #59) and Motion for Leave to File Sur-Reply/Motion to Strike  (Doc. #60).

2.      Defendants' Motion to Strike (Doc. #57) is **denied**.

3.      Plaintiff's Motion for Extension of Time (Doc. #59) and Motion for Leave to file Sur-Reply/Motion to Strike (Doc. #60) are **denied**.

4.      Defendants' Motion for Summary Judgment (Doc. #36) is **granted**.

5.      The Clerk of Court shall terminate this action.

DATED this 17th day of February, 2010.


_____
David G. Campbell
United States District Judge